**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Mohegan Lake Motors, Inc.  Plaintiff, | Civil Action No. 16-cv-6717 |
| v. | |
| Thomas Maoli, Celebrity Auto of Mohegan Lake, LLC  Defendants. | **COMPLAINT** |

This is a case involving a purchaser's wrongful refusal to close on the agreed-upon purchase of an automobile dealership in Westchester, New York as set forth in an Asset Purchase Agreement ("APA" or "Agreement") dated November 10, 2015.

## THE PARTIES

1. Plaintiff is Mohegan Lake Motors, Inc. ("Mohegan Lake"), a New York Corporation located in Mohegan Lake, New York.

2. Defendant Thomas Maoli ("Maoli") is a resident of the State of New Jersey. He has listed his address as 130 State Route 10 West, Whippany, New Jersey. Through a variety of special purpose LLCs he has created, Maoli owns multiple car dealerships in New Jersey.

3. Defendant Celebrity Auto of Mohegan Lake LLC ("Celebrity Auto") is a New Jersey limited liability company with an address at 130 State Route 10 West, Whippany, New Jersey. Defendant Maoli created Celebrity Auto for the purpose of acquiring Mohegan Lake Motors. On information and belief, Celebrity Auto has little or no assets or capital.

4. Defendant Maoli is the managing member of, and the source of all funds and capital of, Defendant Celebrity. Defendant Maoli is the real party in interest in the purchase of

1

the Mohegan Lake Audi auto dealership.  He negotiated the agreement to purchase the dealership, and made all representations and promises with respect to the Agreement.  All funds required to complete the purchase of the Mohegan Lake dealership were to come from Maoli or through financing that he could arrange based on his own financial assets.

5.     At all times Celebrity Auto was a shell and the alter ego of Defendant Maoli.  Celebrity Auto has no income, no employees, and could not have consummated the purchase of the Mohegan Lake auto dealership other than through Maoli, who dominated and controlled this acquisition shell entity.

## JURISDICTION AND VENUE

6.     Federal Court jurisdiction is proper due to the diversity of citizenship of the parties pursuant to 28 USC § 1332.  The amount in controversy exceeds $75,000.

7.     Further, pursuant to § 9.6 of the APA, each of the parties "consents to submit itself to the exclusive personal jurisdiction of any state or federal court sitting in the State of New York, Westchester County, in any Proceeding. . . ."

8.     Defendant Maoli came to New York in connection with the negotiation and inspection of the dealership which was the subject of the APA.  In addition, Maoli had multiple email and telephone conversations with Barry Rost, the owner of Mohegan Lake Motors, regarding the terms of the negotiated purchase of the dealership throughout 2015 and into 2016.  Further, Maoli committed acts of fraud in New York and having consequences in New York in connection with the purchase of the Mohegan Lakes dealership.

9.     Venue is proper in the Southern District of New York because the dealership in question is located in the District, negotiations occurred in the District, signatures to the contract took place in the District, and Maoli's personal check for the Agreement's escrow was, or was

supposed to be, delivered to an escrow agent in Westchester County, New York, and fraudulent representations and/or omissions were made in and/or caused harm in Westchester County, New York.

10. The Agreement is to be governed by the laws of the State of New York pursuant to § 9.5 of the APA. A copy of the APA is attached as Ex. A.

## ALLEGATIONS OF FACT

11. On or about June 2015, Maoli and Barry Rost ("Rost") who is the principal owner and President of Plaintiff began negotiations for the sale of the auto dealership owned by Mohegan Lake, whose principal office and facilities are located at 1791 Main Street, Mohegan Lake, Westchester County, New York (the "Dealership"). On June 19, 2015 Maoli and Rost signed a letter of intent outlining parameters for purchasing the dealership.

12. On August 19, 2015, unbeknownst to Rost or Plaintiff, a personal injunction (the "Injunction") was decreed against Maoli by the Honorable Louis S. Sceusi of the Superior Court of New Jersey, Family Part, Morris County, in case no. FM-14-1187-13, which was a divorce proceeding between Maoli and his wife. Pursuant to that Injunction, Maoli was enjoined from purchasing any business except for an unrelated BMW franchise. A true and correct copy of this Injunction – redacted by the New Jersey Court – is attached hereto as Ex. B.

13. Maoli intentionally and deliberately concealed the existence of this injunction from Plaintiff and Rost and never revealed to either of them that he was legally barred from acquiring the Mohegan Lakes Dealership.

14. On or about November 10, 2015, Maoli and Rost signed the APA through which ownership of the Dealership – Mohegan Lake Motors located at 1791 Main Street, Mohegan Lake, New York – operating for years as "Mohegan Lake Audi" – would be transferred to Maoli's shell corporation Celebrity Auto.

3

15. Pursuant to § 5.1(a)(i) of the APA, Maoli would cause Celebrity Auto to transfer ownership of the auto Dealership to another newly-created Maoli corporation to be organized under the laws of New York upon the closing.

16. At all times Mohegan Lake complied with all terms and conditions of the APA.

17. The agreed-upon purchase price for the dealership was in excess of $8,000,000.

18. Pursuant to § 3.5(a) of the APA, Purchaser was required to provide a check to an escrow agent in White Plains, New York in the amount of $500,000 to be held in escrow.

19. Although Thomas Maoli purported to provide the escrow agent, Bass Sox Mercer, with a personal check of $500,000 on November 10, 2015, upon information and belief that money was either never deposited into an escrow account or has been improperly removed from that account. A copy of that escrow check from the personal account of Maoli, along with bank account information showing the personal account of Maoli is attached as Ex. C.

20. In order for Maoli to be approved by Audi of America ("Audi" or "AoA" ) to become the owner of an Audi dealership, and as part of the requirements of the APA (e.g., § 7.2(b)), Maoli was required to supply Audi with detailed financial information regarding Maoli's business and personal financial assets as well as information concerning Maoli's experience and financial success in running the several other car dealerships Maoli owned and operated in New Jersey. Since Celebrity Auto, itself, had no assets and no history of operations, this information was reasonably necessary for AoA to determine whether to permit Celebrity Auto to acquire the Mohegan Lake Audi franchise.

21. Although § 7.2(b) of the APA required Purchaser "to submit to the Manufacturer [Audi] all information commercially reasonably required by the Manufacturer to approve the issuance to the Purchaser of a dealer sales and service agreement and otherwise approve the

4

Purchase . . . ," Maoli failed to provide Audi with the required disclosures in response to any of AoA's letters requesting a completed application package for transfer of the proposed transfer of Mohegan Lake's Audi dealership operations. Accordingly, AoA notified Maoli and Celebrity Auto that it could not approve the transfer of the franchise without Defendants providing the necessary requested data. On information and belief, Maoli deliberately stalled seeking approval from AoA because upon approval by AoA he knew that he would have to consummate the purchase of Mohegan Lake and he knew that he was enjoined from doing so under the Injunction and that if he proceeded, he risked being held in contempt by the New Jersey Court. Additionally, Maoli failed to provide even basic financial information requested by Audi Financial Services, Inc. to process his application for a required floorplan and financing as deemed necessary by Audi.

22. On or about March 7, 2016, Maoli spoke to Plaintiff Rost and requested a 60 day extension of time to complete the transaction. Maoli falsely told Mohegan Lake that his application package to AoA was virtually complete and that he only needed a little more time to secure approval. Maoli represented that the only hold up and the reason for the extension was that he was waiting for building drawings from Redcom, Audi's approved general contractor. Further, Maoli cancelled two difficult to schedule meetings with the President of Audi of America and Chief Operating Officer which were mandatory to receive final approval.

23. Had Mohegan Lake known of the injunction, it never would have entered into the APA with Maoli and Celebrity Auto unless and until the injunction was dissolved. Maoli's failure to disclose the existence of the injunction preventing him from moving forward with the purchase was a willful and material omission.

24. By a communication dated June 26, 2015, Maoli requested extensive and detailed certain due diligence materials, in fact 57 separate categories of documents were requested from Plaintiff. All of the requested materials were provided to Maoli within two weeks.

25. Even though Mohegan Lake fully complied with all terms of the APA, including the provision of all requested due diligence materials, Maoli sent a letter purporting to terminate the agreement dated May 3, 2016. That termination letter (attached as Ex. D) consisted of a single sentence. It cited no factual basis for the termination, and instead referred only to one sub-paragraph of the APA as the sole ground for the termination; namely, § 8.1(h).

26. Notwithstanding this purported ground for termination, Maoli told Rost that Maoli had been unable to give any of his attention to the transaction or the due diligence because he had been occupied with his pending divorce.

27. § 8.1 of the APA lists a number of different grounds on which the Agreement could be terminated by either or both of the parties. Sub-section 8.1(h) provides that the Agreement may be terminated prior to the closing "if the Purchaser is dissatisfied with its due diligence inspections. . . ."

28. Neither Maoli, nor his alter ego Celebrity Auto, ever notified Seller and/or the Shareholders (Rost and his brother) of any due diligence problems and specified none in this letter. Nor did Maoli or Celebrity Auto ever request any additional information that was not provided as part of the due diligence or suggest that the due diligence materials were deficient in any respect.

29. Neither Maoli, nor his alter ego Celebrity Auto, had any basis for invoking § 8.1(h) of the APA, and no good faith basis existed for such termination.

30. Neither Maoli nor Celebrity Auto ever cited sub-section 8.1(b) of the APA as a ground for termination. That provision would have allowed a termination "if there has been a material breach by the Seller and/or the Shareholders of any representation, warranty covenant or agreement set forth in this Agreement. . . ." APA § 8.1(b).

31. Neither Rost nor Mohegan Lake ever materially breached "any representation, warranty, covenant or agreement set forth in this Agreement . . . ."

32. On or about May 3, 2016 in a text message to Rost, Maoli tacitly admitted that the termination under § 8.1(h) was made in bad faith, as he expressly stated that the termination had been suggested to Maoli by his counsel as a means of causing Rost to enter into new negotiations aimed at lowering the price of the dealership. "OK, I want to discuss the price adjustment. My lawyer wanted to send the letter before we discussed, sorry you know Hess (sic) lawyers."

33. Pursuant to § 9.12 of the APA, the prevailing party in any litigation to enforce the rights and remedies relating to any claim, specifically including a claim for breach of contract, shall be entitled to the award of attorneys' fees and costs.

## FACTUAL ALLEGATIONS RELEVANT TO ALTER EGO LIABILITY

34. Upon information and belief, Defendant Celebrity Auto has not observed corporate formalities, such as election of directors or keeping of corporate records.

35. Upon information and belief, Celebrity Auto has no assets of its own, and was relying entirely on Maoli for capitalization and the funds for the Purchase of the Mohegan Lakes dealership.

36. Upon information and belief, Maoli is the sole member of Celebrity Auto.

37. Celebrity Auto shares the same mailing address and telephone numbers as Maoli, as well as other corporations owned and/or controlled by Maoli.

7

38. Maoli used Celebrity Auto solely as a device to further his personal business.

39. Maoli exercised complete domination over Celebrity Auto with respect to the negotiation of the APA, Celebrity Auto's conduct following the APA, and the termination of the APA.

40. To create the appearance of satisfying Celebrity Auto's escrow obligation under § 3.5(a) APA, Maoli provided a copy of a personal check from Valley National Bank, in the amount of $500,000, to Bass Sox Mercer Attorney Trust Account.

41. The address on the check was from the account of "Thomas Maoli, 130 State Route 10 West, Whippany, NJ 07981-2107." The copy of Maoli's check noted it was for the "Purchase of Mohegan Lake Motors Inc."

42. Maoli's domination and control over Celebrity Auto was used to inflict a wrong on Mohegan Lake, which resulted in Mohegan Lake's damages.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

43. Plaintiff repeats and re-alleges the allegations of Paragraphs 11-42 above as if fully set forth herein.

44. The APA was a valid, enforceable contract between Defendants and Mohegan Lake.

45. Mohegan Lake fully complied with all terms of the APA.

46. Defendants breached the contract by the following acts and conduct, among others:

   a. Entering into the APA when Maoli was enjoined from acquiring Mohegan Lake and failing to disclose this crucial fact.

8

    b. Maoli's seemingly advancing Celebrity Auto's $500,000 escrow deposit without actually delivering the check for deposit (and/or improperly removing) $500,000 in escrow, in violation of § 3.5(a) of the APA.

    c. Failing or refusing to provide information in a timely fashion - or at all - that was requested by AoA in order to allow AoA to consider and to approve the transfer of Mohegan Lake Audi's dealer franchise to Celebrity Auto and to issue to Defendants a dealer sales and service agreement, or otherwise approve the Defendants as an authorized dealer, in violation of § 7.2(b) of the APA.  Further, Defendants failed to make best efforts to secure necessary financing that was essential to complete transaction.

    d. Improperly purporting to terminate the Agreement by invoking § 8.1(h).

47. Mohegan Lake incurred substantial damages by Maoli and Celebrity Auto's breach of the contract.

## SECOND CAUSE OF ACTION
## <u>BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING</u>

48. Plaintiff repeats and re-alleges the allegations of Paragraphs 11-47 above as if fully set forth herein.

49. Under New York law, every contract contains an implied covenant of good faith and fair dealing.

50. The APA was a valid, enforceable contract between Maoli, Celebrity Auto and Mohegan Lake.

51. § 8.1(h) of the APA permitted termination if the purchaser was "dissatisfied with its due diligence inspections. . . .".  In other words, Purchaser could only terminate under this provision if the Seller failed to meet its obligation to provide reasonably requested due diligence

materials, or the information provided in due diligence revealed material problems with the representations and warranties from the seller in the APA.

52. Where performance in a contract is subject to the satisfaction of the other party, that judgment must be exercised honestly and in good faith. A party is not justified in acting capriciously, arbitrarily, or in bad faith.

53. Seller did provide all requested due diligence materials to Purchaser and Defendants never claimed otherwise. Maoli and Celebrity Auto had no basis for being dissatisfied with the due diligence, and they provided no indication of any dissatisfaction with the due diligence material provided by Mohegan Lake. Nor was there any information provided in the due diligence material that indicated that Plaintiff was not in full compliance with all the representations and warranties provided in the APA.

54. Nor did Maoli and Celebrity Auto ever claim that any information contained in the due diligence provided by Mohegan Lake raised any concerns. Indeed, Maoli orally advised Rost that he sent the termination letter in order to trigger a renegotiation of the purchase price of the transaction.

55. Maoli and Celebrity Auto asserted the termination provision under §8.1(h) in bad faith to avoid having to admit that they were in breach of contract, and had been engaged in fraud and bad faith negotiations, because Maoli was prohibited by a New Jersey court injunction from closing on the purchase of the dealership.

56. § 7.9 of the APA expressly prohibited Rost and Mohegan Lake from entertaining discussions with any other potential purchaser while the deal with Maoli was subject to closing. As a result, Rost was unable to pursue any other sale opportunities while Maoli stalled.

57. Maoli and Celebrity Auto's conduct in negotiating, entering into, and then terminating the contract were all done in breach of the covenant of good faith and fair dealing.

58. Mohegan Lakes incurred damages by Maoli and Celebrity Auto's breach of the implied covenant of good faith and fair dealing.

### THIRD CAUSE OF ACTION
### FRAUD

59. Plaintiff repeats and re-alleges the allegations of Paragraphs 11-58 above as if fully set forth herein.

60. Maoli made at least three separate misrepresentations of material fact to Mohegan Lake:

   a. By keeping silent about the existence of the Injunction and in negotiating and executing the APA through , and further representing and warranting in §5.1(a)(ii) of the APA that "no approval or consent of any other person is required . . .", and by his course of conduct, Maoli knowingly and fraudulently misrepresented to Plaintiff that Maoli was legally able to purchase the dealership.  In fact, at all times, Maoli concealed the fact that he was enjoined from making any such purchase by the injunction of the New Jersey Court adjudicating his divorce proceedings.

   b. On or about November 10, 2015, Maoli further misrepresented his ability to enter into the APA by leading Plaintiff to believe that he had actually deposited $500,000 in escrow by exhibiting to Rost a copy of a check he had signed for $500,000 to the escrow agent, whereas, in fact, that would have likely violated the Injunction.  Therefore, on information and belief, Maoli caused the check to never be deposited in escrow.

11

  c. Additionally, Maoli misrepresented to Rost during a telephone conversation on March 7, 2016 that he was responding to AoA's requests for information, and that his application was virtually complete except for the final building concept. In actuality, Maoli had not responded to even basic requests for documents by AoA and Audi Financial Services, and had cancelled two extremely important meetings with AoA highest executives.

61. Maoli had knowledge of the falsity of his representations to Mohegan Lake:

  a. Maoli was fully aware of the injunction that had been issued in his divorce proceeding, and the reasonable belief and expectation he had created with Plaintiff that he was permitted to consummate the transaction contemplated by the APA.

  b. Maoli was fully aware that he had not actually deposited the $500,000 escrow deposit to the escrow agent, and the reasonable belief and expectation he created with Mohegan Lake by exhibiting to it a copy of a signed check in that amount, which, upon information and belief, was never deposited.

  c. Maoli was fully aware that his application to AoA was not "virtually complete" and that in reality he was not responding to basic requests for information, and also was cancelling meetings with AoA executives.

62. Maoli intended to deceive Mohegan Lake and induce reliance :

  a. Maoli knew that Plaintiff and Rost were not aware of the New Jersey injunction and deliberately concealed that fact from them. Without

       Maoli's representation that he was legally able to purchase the dealership, Mohegan Lake would not have entered into negotiations with Maoli and would not have entered into the APA., and would not have agreed to refrain from entering into negotiations with any other potential purchasers.

    b. Without Maoli's representation that he had deposited the $500,000 escrow deposit to the escrow agent, Mohegan Lake would have immediately terminated the APA or would have demanded that the escrow be deposited for its protection and would have been put on alert that Maoli was not to be trusted.

    c. Without Maoli's representation that his application materials to AoA were virtually complete, and that he was responding in good faith to their requests for information, Mohegan Lake would not have granted the requested 60 day extension to the APA, and would have terminated the contract.

63. Mohegan Lake reasonably relied upon the Maoli's misrepresentations

    a. Mohegan Lake had no basis to believe that his divorce in any way would impact his ability to close the transaction.

    b. Mohegan Lake had no basis to believe that the escrow amount was not deposited with the escrow agent, in light of the fact that Maoli provided to Mohegan Lake a photocopy of a signed check in that amount, made out to the escrow agent.

    c. Mohegan Lake had no basis to believe that Maoli was not complying fully with AoA's requests for documents and meetings. Maoli orchestrated a

systematic and planned slow down and delay in the approval process in the hope that the divorce injunction would be removed during this delay tactic and enable him to purchase the dealership legally and further the delay would enable him to negotiate a lower price.

64. Mohegan Lake was substantially damaged by Maoli's fraudulent misrepresentations.

## **PRAYER FOR RELIEF**

WHEREFORE, Mohegan Lake respectfully prays that this Court enters judgment against Defendants, and each of them, for:

1. The $500,000 escrow payment required by Section 3.5(a) of the APA;

2. Direct and consequential damages; in excess of $8,000,000 in an amount to be proved at trial;

3. Punitive damages for fraud;

4. Reasonable attorneys' and paralegals' fees, costs and expenses, as specified in Section 9.12 of the APA;

5. Such other and further relief as the Court deems just and proper.

Dated: August 25, 2016

Respectfully submitted,

/s/ Thomas G. Rohback
_____

Stephen M. Axinn
SDNY Bar No. SA7445
Thomas G. Rohback
SDNY Bar No. TR4817
Evan T. Lee
SDNY Bar No. EL4416

15

Axinn, Veltrop & Harkrider LLP
114 W. 47th Street
New York, NY 10036
Phone: 212.728.2200
Fax: 212.728.2201

90 State House Square
Hartford, CT 06103
Phone: 860.275.8100
Fax: 860.275.8101
Email: saxinn@axinn.com
         trohback@axinn.com
         elee@axinn.com