USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/7/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MOHEGAN LAKE MOTORS, INC.,

                    Plaintiff,

-against-

THOMAS MAOLI, CELEBRITY AUTO of
MOHEGAN LAKE, LLC,

                     Defendants.

No. 16-CV-06717 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

    Plaintiff Mohegan Lake Motors, LLC ("Mohegan Lake Motors" or "Plaintiff") commenced this diversity action against Thomas Maoli ("Maoli") and Celebrity Auto of Mohegan Lake, LLC ("Celebrity Auto"), a company owned by Maoli (collectively, "Defendants").[1] This lawsuit arises out of Celebrity Auto's termination of a contract it had with Plaintiff to purchase Mohegan Lake Motors. Specifically, Plaintiff alleges causes of action for breach of contract, fraud, and breach of the covenant of good faith and fair dealing. The breach causes of action are alleged against Maoli by way of alter-ego liability and against Celebrity Auto directly. The fraud cause of action is alleged against Maoli only.

    Defendants now move to dismiss: (1) the claim for breach of the covenant of good faith and fair dealing (Claim II); (2) the fraud claim (Claim III); and (3) all claims against Maoli pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief could be granted. For the reasons stated below, Defendants' motion is GRANTED in part, and DENIED in part.

---

[1] Plaintiff is a corporation located in the state of New York. (Compl. ¶1.) Celebrity Auto is New Jersey limited liability company and Maoli is a resident of New Jeresey. (Compl. ¶¶ 2-3.)

# BACKGROUND

I.  **Facts Alleged**[2]

The following facts – which are taken from the Complaint, documents annexed thereto, and matters of which the Court may take judicial notice[3] – are construed in the light most favorable to Plaintiff, as it is the non-moving party. *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011).

On November 10, 2015, Plaintiff and Celebrity Auto entered into an Asset Purchase Agreement (the "Agreement") whereby Celebrity Auto would purchase an auto dealership owned by Plaintiff and located at 1791 Main Street, Mohegan Lake, Westchester County, New York (the "Dealership") for $8,000,000.00. (Compl. ¶¶11,14, Agreement annexed to Compl. as Ex. A ("Agmnt.") § 3.1.) Approximately six months after the parties signed the Agreement, Maoli wrote a letter to Barry Rost (Plaintiff's principal owner) terminating the Agreement pursuant to Section 8.1(h). (*Id.* at Ex. D.)

Celebrity Auto is owned by Maoli. (Compl. ¶¶3-4; *see also* Celebrity Auto Entity Rec.) This limited liability company was created in June 2015 for the purpose of purchasing the Dealership and was meant to be dissolved at the closing. (Compl. ¶¶3-4, 15; Agmnt. § 5.1(a); *see also* Celebrity Auto Entity Rec.) It has no other employees or officers, no assets or capital of its own, no history of operations, and it shares the same address as Maoli. (Compl. ¶¶2-5, 20, 35-37,

---

[2] The Court assumes the truth of the facts alleged in Plaintiff's Complaint for purposes of this motion only, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and considers documents which are either incorporated by reference or integral to the claims asserted therein. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[3] The Court will take judicial notice of the document attached to Defendants' Reply Memorandum in Support of the Motion to Dismiss (ECF No. 21) ("Defs. R.") as Exhibit A ("Celebrity Auto Entity Rec.") and use it in considering this motion, as it is a public record. *See Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).

41.) Indeed, its entire corporate structure and entity information is contained on a two and a half page document. (*See* Celebrity Auto Entity Rec.)

Maoli negotiated the terms of the Agreement with Plaintiff's principals and "made all representations and promises with respect to the Agreement." (Compl. ¶¶4, 39.) Plaintiff knew Maoli was undergoing divorce proceedings, (Compl. ¶63(a)), but was unaware that on August 19, 2015, three months prior to execution of the Agreement, Judge Loius S. Sceusi of the Superior Court of New Jersey, Family Part, issued a personal injunction against Maoli (the "Injunction"), (Compl. ¶12.) Such Injunction ordered, *inter alia*, that Maoli was precluded from acquiring or selling "any business, or real or personal property during the pendency of the divorce action unless agreed to by the parties in writing with Court approval," aside from an explicitly mentioned BMW dealership purchase. (*Id.* at Ex. B.)

The parties executed the Agreement on November 10, 2015, which obligated Celebrity Auto to provide a check in the amount of $500,000 to be held in escrow. (Compl. ¶18; *see also* Agmnt. § 3.5(a).) Maoli provided a personal check in the amount of $500,000 to the escrow agent on the date the Agreement was executed. (Compl. ¶19, Ex. C.) This personal check bore the same address as the business address for Celebrity Auto. (*Id.*; *see also* Celebrity Auto Entity Rec.) That money was allegedly never deposited into the escrow account. (Compl. ¶19.)

Defendants were required to provide certain information to Audi of America ("Audi") to be approved as an authorized dealer, but failed to do so when requested.[4] (Compl. ¶¶20-21; Agmnt. §7.2(b).) Instead, Maoli requested a "60 day extension of time to complete" his application for approval and forward the requested documents. (Compl. ¶22.)

---

[4] There is a dispute between the parties as to whether the contract required Maoli to turn over documents and personal financial information or just financial information for Celebrity Auto. (*Compare* Compl. ¶20 *with* Def. R. at 1, fn 1.) This Court need not resolve this dispute now as it has no bearing on the outcome of this motion.

Section 8.1 provides termination options including 8.1(h), which permits termination if the purchaser "is dissatisfied with its due diligence inspection." (Compl. ¶27; Agmnt. § 8.1(h).) On June 26, 2015, on behalf of Celebrity Auto, Maoli initiated such a due diligence inspection by requesting an "extensive and detailed" list of due diligence materials, all of which "were provided to Maoli within two weeks." (Compl. ¶24.) At no time did Maoli or Celebrity Auto request any additional due diligence materials or indicate that the due diligence materials provided were "deficient in any respect." (Compl. ¶28.) Nevertheless, on May 3, 2016, Maoli terminated the Agreement citing Section 8.1(h). (Compl. ¶25, Ex. D.)

## LEGAL STANDARD

### A. Standard of Review

In evaluating Defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the Complaint as true and draw all reasonable inferences in Plaintiff's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

A Court is "limited to the facts as presented within the four corners of the complaint, [the] documents attached to the complaint, or [] documents incorporated within the complaint by

4

reference. *Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002) (citing *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). Courts are also permitted to "look to public records . . . in deciding a motion to dismiss." *Id.* (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)) (discussing the Court's ability to consider a state court's divorce decree that was "incorporated in [the] complaint by reference").

## DISCUSSION

### A. The Implied Covenant of Good Faith and Fair Dealing

Defendants move for dismissal of Plaintiff's claim for breach of the implied covenant of good faith and fair dealing (the "covenant"). (*See* Defendants' Brief in Support of Motion to Dismiss (ECF No. 23) ("Defs. Br.") at 14-16.)

Pursuant to New York law, the covenant is a promise inherent in *all* contracts. *KCG Ams. LLC v. Brazilmed, LLC*, No. 15CV4600 (AT), 2016 WL 900396, at *5 (S.D.N.Y. Feb. 26, 2016) (emphasis added); *Dayan Enters., Corp. v. Nautica Apparel, Inc.*, No. 03CV5706 (LLS), 2003 WL 22832706, at *2 (S.D.N.Y. Nov. 26, 2003). Indeed, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled." *Matsumura v. Benihana Nat. Corp.*, 465 Fed. App'x 23, 29 (2d Cir. 2012) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73 (2d Cir. 2002)); *see also Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (duplicative where "both 'arise from the same facts and seek the identical damages for each alleged breach'"). In fact, "in most cases, claims for breach of contract and the covenant of good faith and fair dealing are duplicative." *Dayan Enters.*, 2003 WL 22832706, at *2; *see also Goldblatt v. Englander Comms. L.L.C.*, No. 06CV3208 (RWS), 2007

WL 148699, at *5 (S.D.N.Y Jan. 22, 2007) (citing *Alter v. Bogorician*, No. 97CV0662 (MSM), 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6, 1997) for proposition that "every court faced with [a motion to dismiss with] both breach of contract and breach of the [] covenant . . . has dismissed the latter claim as duplicative"). This is particularly true where there is no prayer for separate damages not recoverable under the breach of contract claim. *Deutsche Bank*, 810 F.3d at 869.

Plaintiff's breach of the covenant claim is duplicative. The allegations contained in paragraph 49, 52, 57, and 58 are mere conclusory statements this Court can properly disregard. *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996). The remaining facts alleged (with the exception of those in paragraph 56) pertain to the issue of whether Defendants were dissatisfied with the due diligence process. (Compl. ¶¶53, 54, 55.) These facts, though not identical, were alleged in support of the breach of contract claim. (*Compare* Compl. ¶¶ 27-29, 32, 44 *with* Compl. ¶¶50-51, 53-55.); *see also Underdog Trucking LLC, Reggie Anders v. Verizon Svcs. Corp.*, No. 09CV8919 (DLC), 2010 WL 2900048, at *6 (S.D.N.Y. Jul. 20, 2010) (Claims are duplicative even when they "are not identical [but] they are based upon the same facts.").

Further, considered together, these facts relate to the allegation that the Agreement was breached by improperly invoking Section § 8.1(h), (Compl. ¶46(d)), since § 8.1(h) relates to termination for dissatisfaction of the due diligence investigation, (Agmnt. § 8.1(h).) Such allegations thus amount to no more than a "statement of a mere contract breach." *Hall v. EarthLink Network, Inc.*, 396 F.d 500, 507 (2d Cir. 2005); *see also KCG Ams.*, 2016 WL 900396, at *5 (noting a proper claim for breach of covenant requires more than a "breaching [of] the terms of the contract in a technical sense"). The only difference between the breach claims is that Plaintiff alleges the covenant was breached when Defendants "asserted the termination provision under §8.1(h) in bad faith." (*Compare* Compl. ¶¶ 55, 57 *with* ¶46(d).) The inclusion of the phrase "bad faith" is

insufficient to sustain a breach of the covenant. *See Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 452 (S.D.N.Y. 2014) (dismissing claim as duplicative and citing *Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*, 937 F. Supp. 2d 355, 365 (E.D.N.Y. 2013) to assert that "bad faith in connection with contract claim does not provide an independent basis for recovery"). For these reasons alone, the claim for breach of the covenant is ripe for dismissal.

Additionally, Plaintiff has failed to establish a separate legal duty to act in good faith. "[W]here a plaintiff establishes a legal duty separate and apart from contractual duties, [a breach of the covenant claim] is viable despite the existence of an express contract." *Washington v. Kellwood Co.*, No. 05CV10034 (DAB), 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009). Plaintiff's argument that the breach of the covenant should stand due to Plaintiff's interpretation of Section 8.1(h) is unpersuasive. Plaintiff argues that the covenant requires §8.1(h) be "read to require any assertion of 'dissatisfaction' to have been reached in good faith and to be objectively fair" and termination be made on an "honest, good faith, and objectively fair basis." (Plaintiff's Brief in Opposition to the Motion to Dismiss (ECF No. 20) ("Plf. Br.") at 13.) Indeed, any action at all with respect to the Agreement should have been honest, made in good faith, or objectively fair, as that is what the covenant requires. *Hard Rock Café Int'l, (USA), Inc. v. Hard Rock Hotel Holdings*, 808 F. Supp. 2d 552, 568 (S.D.N.Y. 2011) (noting that the covenant "does not add obligations beyond those set forth in the agreement"). Nevertheless, that is inherent in all contracts and Plaintiff's argument fails to demonstrate that a separate legal duty existed.

This Court's decision is not inconsistent with *Hard Rock*; there the Court found the covenant was properly alleged because plaintiff pled additional facts not alleged in the contract clam *and* there was no possibility for double recovery since the breach of covenant claim was pled in the alternative. *Id*. at 568-69. Conversely, Plaintiff's allegations parrot those of the breach of

7

contract. The addition of the allegations contained in paragraph 56 do no more to make this case analogous to *Hard Rock*. They do not identify any conduct by Maoli that frustrated Plaintiff's ability to reap the benefits of the contract, *see Id.* at 568-69; they merely identify a provision of the Agreement to which Plaintiff adhered, (Compl. ¶56.) Further, the claim is not alleged in the alternative; it is a separate cause of action, unlike in *Hard Rock*.

Finally, Plaintiff does not assert "damages or other relief [not] already claimed in the companion contract cause of action." *KCG Ams.*, 2016 WL 900396, at *6. In such circumstances, the Court must dismiss the covenant claim. *Id.* at *6 (damages cannot be "intrinsically tied to the damages allegedly resulting from breach of contract"); *Deutsche Bank*, 810 F.3d at 869 (dismissing as duplicative claim that "seek[s] identical damages"). Indeed, Plaintiff merely alleges that "Mohegan Lake incurred damages by Maoli and Celebrity Auto's breach of the implied covenant." (Compl. ¶58.) Further, the Agreement caps damages at $2,000,000, except for those arising out of "fraud or intentionally [sic] misrepresentation." (Agmnt. § 6.3(c).) The exclusion of fraud and intentional misrepresentation, but not breach of the covenant, necessarily means that any damages arising therefrom would be subject to the cap. Accordingly, Plaintiff did not allege separate damages. Plaintiff's breach of the covenant claim is dismissed.

**B. Fraud**

Defendants argue that Plaintiff's fraud claim should also be dismissed as duplicative.[5] (Defs. Br. at 16.) Defendants further argue that they have no separate duty "outside the contract" that would permit a fraud claim to move forward.[6] (*Id.* at 19.)

---

[5] Defendants suggest that the fraud claim is asserted against both Maoli *and* Celebrity Auto. (Defs. Br. at 16 (fraud cause of action "based upon Celebrity's alleged breach of the asset purchase agreement").) A review of the Complaint and Plaintiff's opposition, however, demonstrate that the fraud claim is asserted against Maoli only. (Compl. ¶¶ 60 ("Maoli made at least three separate misrepresentations"), 61 ("Maoli had knowledge"), 62 ("Maoli intended"), 63 (Maoli's misrepresentations"), 64 ( "Maoli's fraudulent misrepresentations"); *see also* Plf. Br. at 15-18.)

[6] Defendants do not argue that Plaintiff failed to allege its fraud claim with the requisite particularity required by Fed. R. Civ. P. 9(b). (Defs. Br. at 16-21.) Accordingly, this Court need not undergo a detailed analysis of whether the

8

To state a claim for fraud, a plaintiff must allege that "(1) the defendant made a material false representation or omission, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Bridgestone/Firestone, Inc. v. Recover Credits Svcs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (quoting *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995)) (internal quotations omitted); *VTech Holdings Ltd. v. Lucent Tech., Inc.*, 172 F. Supp. 2d 435, 439 (S.D.N.Y. 2001). In federal court, a plaintiff must plead each of these elements with particularity. Fed. R. Civ. P. 9(b).

Defendants are correct that "no action for fraud [can] stand[] when the only fraud charged relates to breach of a contract." *Washington*, 2009 WL 855652, at *3. Therefore, "general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud] claim." *Wall v. CSX Transp. Inc.*, 471 F.3d 410, 416 (2d Cir. 2006); *see also Bridgestone/Firestone*, 98 F.3d at 19; *Int'l Elecs. Inc. v. Media Syndication Global, Inc.*, No. 02CV4274, 2002 WL 1897661, at *2 (S.D.N.Y. Aug. 17, 2002) (noting that "a simple misrepresentation of an intention to perform, does not ordinarily give rise to a claim for fraud"). Plaintiff's claim for fraud, however, does more.

Despite the general rule, fraud and breach of contract claims can coexist. *Wall*, 471 F.3d at 416. A plaintiff can properly plead them together if it can demonstrate: (1) "a legal duty separate from the duty to perform under the contract;" or (2) a fraudulent misrepresentation collateral or extraneous to the contract;" or (3) that "special damages [] are caused by the misrepresentation

---

standard was met. Plaintiff has alleged sufficient facts to demonstrate "the time, place, speaker and sometimes even the content of the alleged misrepresentation." *Laugh Factory. Inc. v. Basciano*, 608 F. Supp. 2d 549, 558 (S.D.N.Y. 2009) (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 576 (2d Cir. 2005)); *see also KCG Ams.*, 2016 WL 900396, at *3 (no need to plead allegations with incredible precision). Plaintiff alleges at least three misrepresentations that were made by Maoli, when they were made, and the content of each. (Compl. ¶60.) Plaintiff also alleges that Maoli knew the representations made to Plaintiff were false, intended to deceive Plaintiff and induce reliance, and that Plaintiff did in fact reasonably rely on the misstatements to its detriment. (*Id.* at ¶¶61-64.)

9

and unrecoverable as contract damages." *Bridgestone/Firestone*, 98 F.3d at 20; *see also Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007); *Wild Bunch, S.A. v. Vendian Entertainment, LLC*, 256 F. Supp. 3d 497, 502 (S.D.N.Y. 2017).

Plaintiff alleges three misrepresentations made by Maoli to support its fraud claim; that Maoli: (1) concealed the existence of the Injunction, thereby indicating he was "able to purchase the dealership", (Compl. ¶60(a)); (2) was promising to pay/was paying the escrow payment by providing the $500,000 check to the escrow agent, (Compl. ¶60(b)); and (3) on March 7, 2016, represented that he would be completing his application shortly and would forward the requested information to Audi, (Compl. ¶60(c).)

1. <u>Concealment of Maoli's Injunction</u>

The first misrepresentation relates to Maoli's Injunction. Specifically, that such an Injunction precluded Maoli "from purchasing any business except for an unrelated BMW franchise." (Compl. ¶60(a).) Plaintiff also alleges that Maoli concealed this to induce reliance thereon. (Compl. ¶¶12, 60(a), 61(a), 62(a).) If a plaintiff "allege[s] that [it] would not have entered into the agreement[] with defendant if [it was] aware of information [it] accuse[s] defendant of either misrepresenting or omitting," a claim for fraudulent inducement lies and is thus not duplicative of a breach of contract. *Washington*, 2009 WL 855652, at *3; *see also KCG Ams.*, 2016 WL 900396, at *4 (quoting *First Bank of the Ams. v. Motor Car Funding, Inc.*, 257 A.D. 287, 291-92 (N.Y. App. Div. 1st Dept. 1999) for proposition that fraudulent inducement can survive "even though the same circumstances also give rise to the . . . breach of contract claim"). (*See also* Compl. ¶62(a).) Where this claim is based on an omission, courts look at whether the omission was collateral to the contract and whether there was a duty to disclose the omitted

information. *See Merrill Lynch*, 500 F.3d 171; *Laugh Factory. Inc. v. Basciano*, 608 F. Supp. 2d 549, 549 (S.D.N.Y. 2009); *Washington*, 2009 WL 855652; *Int'l Elecs.*, 2002 WL 1897661.

The failure to disclose the existence of the Injunction is sufficient a basis for fraudulent inducement because the concealment is material and extraneous to the contract and a separate legal duty to disclose this information existed.

As detailed in Section C, *infra*, Plaintiff has alleged sufficient facts for alter-ego liability. Consequently, Celebrity Auto's ability to perform under the Agreement was dependent upon Maoli's finances and ability to do so. Thus, an injunction precluding Maoli from purchasing any dealerships would likewise preclude Celebrity Auto from doing so. Consequently, Maoli's failure to disclose the existence and nature of the Injunction constitutes a material omission of present fact of Maoli's (and thus of Celebrity Auto's) ability to perform that is collateral to the Agreement. *See Wild Bunch*, 256 F. Supp. 3d at 506 ("[A]t a minimum, false statements about a party's present financial condition or current ability to perform made in order to induce a party to enter into a contract will support a claim of fraudulent inducement."); *see also KCG Ams.*, 2016 WL 900396, at * 4 ("Representations about . . . ability to perform . . . under a contract are distinct from representations that entity will perform."); *see also Merrill Lynch*, 500 F.3d at 180 ("[A] misrepresentation of present facts is collateral to the contract.").

Further, Plaintiff pled sufficient facts to show that a duty to disclose did exist. Such a duty may arise "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Wild Bunch*, 256 F. Supp. 3d at 503 (quoting *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 123 (2d Cir. 1984)); *see also Laugh Factory*, 608 F. Supp. 2d at 559; *Int'l Elecs.*, 2002 WL 1897661, at *2. It must concern "information 'peculiarly within the knowledge of [the other], and . . . [must

not be] such that could have been discovered . . . through the exercise of ordinary intelligence." *Wild Bunch*, 256 F. Supp. 3d at 503. Maoli had such superior knowledge.

The fact that Maoli had an Injunction from a divorce court precluding him from purchasing any dealerships, indeed the fact that he was getting divorced at all, was information "peculiarly within" his own knowledge. Plaintiff could not have been expected to consider whether Maoli was precluded from entering into the Agreement on Celebrity Auto's behalf due to his divorce, such that Plaintiff should have searched for the document at all. Additionally, the concealed information impacted Celebrity Auto's ability to "pay at all because a concealed [party] controlled the purse strings." *Wild Bunch*, 256 F. Supp. 3d at 504 (finding this to be "peculiar knowledge"); *see also Merrill Lynch*, 500 F.3d at 181 (Where misrepresentation "relate[s] to matters peculiarly within the other party's knowledge . . . . the wronged party may rely on them without further investigation."). The claim can survive.[7]

This Court also acknowledges that the Agreement could be read to address the concealment of the Injunction insofar as it states that "no approval or consent of any other person is required in connection with the execution, delivery, and performance by the Purchaser of this Agreement . . . ." (Agreement § 5.1(a)(ii).) The concealment merely breached this warranty, as the Injunction required the consent of Maoli's ex-wife and the Divorce Court for purchases of this kind. (Compl. Ex. B.) Nevertheless, this Court has decided that sufficient facts exist to proceed

---

[7] This Court is aware that where the omission "was a matter of public record that could have been discovered through the exercise of ordinary diligence" it cannot be said that the individual justifiably relied on the alleged fraudulent statements. *Martin Hilti Family Trust v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 484-85 (S.D.N.Y. 2015). On its face, the Injunction appears to be a public record which would seem to negate Maoli's superior knowledge. *See Aaron Ferer & Sons*, 731 F.2d at 123 (knowledge not superior where concealed information was "a matter of public record"); *see also Barrett v. Freifeld*, 908 N.Y.S. 2d 766, 738 (App. Div. 2d Dept. 2010) (dismissing fraud claim where fact that defendant "had been arrested . . . was a matter of public record which could have been discovered through the exercise of ordinary diligence"). Nevertheless, even for public matters, the standard requires that the material could have been discovered by the exercise of ordinary diligence. As indicated herein, Plaintiff could not have been expected to undertake such a search in light of the nature of the concealment.

with side by side claims of fraud and breach of contract due to the superior knowledge doctrine; this provision does not alter the result. This is an express warranty and a "plaintiff may elect to sue in fraud on the basis of misrepresentations that breach express warranties." *Merrill Lynch*, 500 F.3d at 184 (finding that fact "that alleged misrepresentations would represent, if proven, a breach of the contractual warranties as well does not alter the result."); *see also First Bank*, 257 A.D. at 292 (A "warranty is not a promise of performance, but a statement of present fact."). This is one such circumstance.

Finally, Defendants cite *Miramax Film Corp. v. Abraham*, arguing that Plaintiff failed to allege special damages not recoverable under the contract to support the fraud claim. (Def. Br. at 19.) This is not dispositive. This Court need not consider whether special damages were alleged because the claim survives based on the duty to disclose.

Plaintiff has alleged sufficient facts to show that Maoli had a duty to disclose the fact that he was enjoined from purchasing any dealerships without prior approval from his ex-wife and the Family Court. Accordingly, Plaintiff has properly pled a cause of action against Maoli for fraud.

2. The Remaining Alleged Misrepresentations

Plaintiff cannot, however, root its fraud claim in the remaining two misrepresentations asserted. Neither are collateral to the Agreement, nor give rise to a legal duty outside the contract.

As an initial matter, these alleged misrepresentations are asserted on behalf of the breach of contract claim. (*Compare* Compl. ¶¶46(b) ("Maoli's seemingly advancing Celebrity Auto's $500,000 escrow deposit without actually delivering the check for deposit") and 46(c) ("failing or refusing to provide information in a timely fashion – or at all–that was requested by [Audi]") *with* ¶¶60(a) (Maoli led "Plaintiff to believe that he had actually deposited $500,000 in escrow.") and 60(b) (Maoli misrepresented "that he was responding to [Audi's] requests . . . and that his

13

application was virtually complete.").) A fraud claim on these allegations is duplicative. *See Washington*, 2009 WL 855652, at *3.

Further, the allegations regarding the $500,000 check are merely intentionally false statements demonstrating intent to perform. This is not a proper basis for fraudulent inducement. Thus, on this misrepresentation, a fraud claim can only stand if one of the *Bridgestone/Firestone* factors are met. *See Bridgestone/Firestone*, 98 F.3d at 19-20. Where, as here, obligations are fixed under the contract and the "trust and confidence [] placed in the [allegedly fraudulent person] had solely to do with carrying out his obligations under the contract," there is no separate legal duty. *Id.* at 20 (vacating finding of fraud for lack of demonstrating legal duty separate from contract). Similar to the defendant in *Bridgestone/Firestone*, Maoli's obligations on behalf of Celebrity Auto regarding the $500,000 check arise from the Agreement only. (*See* Agreement § 3.5(a).) Whether the check was "never deposited in escrow," (Compl. ¶60(b)), or "improperly removed" from the account, (Compl. ¶19), is tangential to that obligation and would only constitute a failure to meet it. Indeed, implicit in this obligation is one to provide a check drawn on a properly funded account; no additional duty exists. Further, the misstatements are not extraneous or collateral. The Agreement and this misrepresentation address, not only "common topics", but the Agreement explicitly details Maoli's obligation; the misstatement is not collateral. *Wall*, 471 F.3d at 417. Additionally, the misrepresentation was made "after" the Agreement was formed. *Wild Bunch*, 256 F. Supp. 3d at 506-07 (noting that [a]fter contractual duty kicked in, any further statements [of intent/ability to pay] are not cognizable under *Bridgestone/Firestone* because they amount to mere false assurances" of intent to perform). A claim for fraud on this ground cannot lie.

Finally, the misrepresentation regarding Maoli's completion of the application on Audi's request, (Compl. ¶60(c)), also fails to form the basis for fraud because it is a promissory statement. "New York law distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement." *Merrill Lynch*, 500 F.3d at 184. His request for an extension of time to complete the paperwork reflects a promise to comply with the obligation under Section § 7.2(b). Additionally, this misstatement was also made after the contractual duty was formed, thus constituting a "false assurance[]" of the intent to perform. *Wild Bunch*, 256 F. Supp. 3d at 506-07.

### C. Piercing the Corporate Veil

In light of the foregoing, this Court need only consider whether Plaintiff has alleged sufficient facts to properly plead a cause of action for breach of contract and fraud against Maoli by piercing the corporate veil.

A veil-piercing claim is the exception to the "'accepted principle' that a corporation exists independently of its owners, as a separate legal entity." *KCG Ams.*, 2016 WL 900396, at *4; *see also De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996) (citing *Williams v. McAllister Bros. Inc.*, 534 F.2d 19 (2d Cir. 1976) for proposition that there is a "presumption of separateness afforded to related corporations") (internal quotations omitted); *Bridgestone/Firestone*, 98 F.3d at 17-18 (noting that in New York, individuals are allowed "to incorporate for the very purpose of avoiding personal liability;" thus courts "disregard corporate form reluctantly") A party can pierce the corporate veil where it is established that: "(1) the owner exercised complete domination over the corporation with respect to the transaction at issue; and (2) that such domination was used to commit a fraud or wrong that injured the party seeking to

pierce the veil." *Parnell v. Tremont Capital Mgmt. Corp.*, 280 Fed. App'x 76, 77 (2d Cir. 2008); *De Jesus*, 87 F.3d at 70 (requiring the demonstration of "actual domination"); *KCG Ams.*, 2016 WL 900396, at *4 (quoting *Morris v. New York State Dep't of Taxation & Fin.*, 623 N.E.2d 1157 (N.Y. 1993)). Veil-piercing is also appropriate where "the corporation has been so dominated by an individual and its separate entity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego." *Bridgestone/Firestone*, 98 F.3d at 17-18 (internal quotations and alternations omitted); *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 400 (S.D.N.Y. 2012). Control is key; however, complete domination, "standing alone, is not enough; some showing of a wrongful or unjust act toward [Plaintiff] is required." *Am. Fuel Corp. v. Utah Energy Dev., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997) (quoting *Morris*, 623 N.E.2d 1157) (internal quotations omitted).

Courts consider a multitude of factors in determining whether complete domination has been met, including: (1) "intermingling of corporate and personal funds"; (2) undercapitalization; (3) "failure to observe corporate formalities"; (4) "failure to pay dividends"; (5) "insolvency at the time of a transaction"; (6) "siphoning off of funds by the dominant shareholder"; and (7) "the inactivity of other officers and directors." *Bridgestone/Firestone*, 98 F.3d at 18. Courts should be more liberal in their considerations of these factors as it relates to small businesses to avoid an "over-rigid preoccupation with" formalities not typically seen in such companies. *Id.* (quoting *Willian Wrigley Jr. Co. v. Waters*, 890 F.2d 594 (2d Cir. 1989) (internal quotations omitted).

The Court must consider the veil-piercing allegations in light of the Rule 8(a) and *Twombly/Iqbal* pleading standards. *Purjes v. Plausteiner*, No. 15CV2515 (VEC), 2016 WL 552959, at *8 (S.D.N.Y. Feb. 10, 2016). Where fraud is also alleged, the "fraud allegations [] are governed by Rule 9(b) . . . while the domination and control elements of the claim need only

16

comply with Rule 8." *In re Alstom SA*, 454 F. Supp. 2d 187, 215 (S.D.N.Y. 2006) (internal quotations and alterations omitted).

Considering these standards, Plaintiff has adequately pled facts of complete domination. Plaintiff does more than merely allege that Celebrity Auto failed to observe corporate formalities and was owned by Maoli. *See Lefkowitz v. Reissman*, No. 12CV8703 (RA), 2014 WL 925410, at *13 (S.D.N.Y. Mar. 7, 2014) (finding allegations went beyond "mere claim that the corporation was dominated by the defendants"). Accepting Plaintiff's allegations as true,[8] Maoli was the only member, indeed only employee of Celebrity Auto, (Compl. ¶¶5, 36), a company which was created a mere months before the Agreement was entered into, (Compl. ¶ 3; Celebrity Auto Entity Rec.), it had "no assets and no history of operations," relying on Maoli for funding, (Compl. ¶¶3-4, 20, 35), and would have been dissolved upon the closing, (Compl. ¶15.) Maoli also negotiated and executed the Agreement on behalf of Celebrity Auto, (Compl. ¶¶4, 14, 39), provided the escrow payment from his personal account, (Compl. ¶¶18-19, 40), and used Celebrity Auto to "further his personal business," (Compl. ¶38.) Plaintiff also alleges that Celebrity Auto "share[d] the same mailing address and telephone numbers with Maoli." (Compl. ¶¶2-3, 37, 41.) Considered together, these facts are sufficient to raise an inference of complete domination. *See A.V.E.L.A., Inc. v. Estate of Monroe*, 34 F. Supp. 3d 311, 320-21 (S.D.N.Y. 2014) (enough where allegations of undercapitalization and that individual was "sole shareholder, officer, director, and employee"); *Lefkowitz*, 2014 WL 925410, at *13 (alter-ego pled where entities shared an address and party

---

[8] The parties contest the reliance on allegations based on information and belief. (Defs. Br. at 9-10; Plf. Br. at 7-9.) This Court finds that there are a significant number of allegations, not based on information and belief, which are supportive of a veil-piercing theory. (Compl. ¶¶3-5, 14, 15, 20, 37-38, 40-41.) The remaining veil-piercing supportive allegations based on information and belief are hereby accepted by this Court as true, as they are either "peculiarly within the possession and control of" Defendants or supported by "factual assertions in" the Exhibits to the Complaint and the Celebrity Auto Entity Record. *See Arista Records, LLC. v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010).

negotiated and signed agreement); *Mazzola*, 849 F. Supp. 2d at 411 (complete domination where allegations showed undercapitalization and that entities were indistinguishable).

Plaintiff has also adequately pled the second prong of the test.[9] To pierce the corporate veil, Plaintiff must establish that the domination was used to commit a fraud or wrong. *Am. Fuel Corp.*, 122 F.3d at 134. As the Court previously determined, Plaintiff has properly pled a cause of action for fraud, *see supra*, Section B. *See Lekowitz*, 2014 WL 925410, at *13 (prong two met where Court already found fraud claim properly pled). Further, Plaintiff has properly alleged a cause of action for breach of contract[10] against Maoli and has pled several instances of conduct which would constitute a wrong sufficient for purposes of veil-piercing. Such allegations include: (1) providing a check in the amount of $500,000 which was allegedly not deposited; (2) the failure to provide financial information "in a timely fashion – or at all" to Audi, in violation of the contract; and (3) the alleged improper termination of the Agreement pursuant to § 8.1(h)." (Compl. ¶46.) *See Purjes*, 2016 WL 552959, at *8 (finding prong two met where breach of contract claim properly pled). Consequently, Plaintiff may pursue the breach of contract claim and fraud claim against Maoli individually; thus, Defendants' motion requesting dismissal of all claims against Maoli is DENIED.[11]

---

[9] Defendants' argument that "plaintiff has failed to plead a single cognizable fact, supporting an allegation that Maoli used Celebrity to" perpetrate a fraud or wrong ignores the factual allegations supportive of the breach of contract claim and fraud claim. (Defs. Br. at 3.) Alter-ego liability does not give rise to its own cause of action; it must be considered in conjunction with the causes of action alleged in the Complaint.

[10] Defendants do not contest the adequacy of the pleadings with respect to the breach of contract claim, except insofar as they argue that Plaintiff "makes no allegation that Maoli, [] was a signatory, or otherwise bound" by the Agreement. (Defs. Br. at 11.) To the contrary, Plaintiff explicitly alleges that Maoli negotiated the terms of the Agreement *and* was a signatory. (Compl. ¶¶4, 14 ("Maoli and Rost signed").)

[11] This decision only finds that Plaintiff has pled sufficient facts to proceed on a theory of alter-ego liability; it does not definitively find that the corporate veil should be pierced, as that is a fact heavy determination reserved for later in the litigation.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part, and DENIED in part. The Court thus grants Defendants' motion and dismisses the breach of the covenant of good faith and fair dealing claim. The Court also denies Defendants' motion on the remaining grounds, finding that Plaintiff has adequately pled a theory of alter-ego liability against Maoli for breach of contract and fraud.

Defendants shall file an answer by January 5, 2018. Counsel for all parties are further directed to appear for an initial case management and scheduling conference with the Court pursuant to Fed. R. Civ. P. 16 on __Jan. 26__, 2018, at __11:30__ AM in **Courtroom 218** of the Charles L. Brieant, Jr. Courthouse, 300 Quarropas Street, White Plains, New York 10601. The parties shall confer in accordance with Fed. R. Civ. P. 26(f) at least 21 days prior to the conference and attempt in good faith to agree upon a proposed discovery plan that will ensure trial readiness within six months of the conference date. The parties shall also complete a Civil Case Discovery Plan and Scheduling Order in advance of the conference. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 24.

Dated: December 6, 2017
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge